**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Willard JEFFRIES, Defendant–Appellant.**

No. 87–2846.

United States Court of Appeals, Seventh Circuit.

Argued April 22, 1988.

Decided Aug. 11, 1988.

always be a reliable substitute for the tax code. Plaintiff-appellant Willard Jeffries, who testified in his own behalf, explained that after studying the Bible he determined that he could become a one-person church and thereby be excused from paying his income taxes. Sometime later he found himself charged with four counts of violating 26 U.S.C. § 7201, alleging a wilful attempt to evade his federal income tax for the tax years 1980–83, and with two counts of violating 26 U.S.C. § 7203, alleging a wilful failure to file his federal income tax returns for the tax years 1984 and 1985. A jury found him guilty, and the court imposed sentences of two years imprisonment on each of counts one through four, and one year terms on each of counts five and six, all to be served concurrently. In addition the court imposed a fine of $10,000.

The defendant raises issues related to the instructions and sufficiency of the evidence. Because his arguments are without merit and border on the frivolous, we affirm.

## I. FACTUAL BACKGROUND

In 1966 the defendant went to work as a federal civilian employee at the Crane Naval Weapon Support Center in Crane, Indiana. From that time until January 4, 1980, he had on file a W–4, Employee's Withholding Allowance Exemption Certificate, claiming five exemptions. He was married and the father of three children. During those same years he timely filed his federal income tax returns.

However, after the defendant got the idea that as a one person church he could qualify for tax exempt status, he began filing W–4's claiming he was exempt from federal income tax withholding. Relying upon those W–4's the Navy ceased withholding any of defendant's wages for federal tax purposes. The defendant then applied a self-conceived tax exemption by failing to file the necessary Form 1040 or to pay any taxes for the years in question. Despite his failure to report any income the evidence showed that for the years 1980 through 1983 he had taxable income rang-

Alfred I. Towell, Bloomington, Ind., for defendant-appellant.

Paula E. Lopossa, Asst. U.S. Atty., Bradley L. Williams, Acting U.S. Atty., U.S. Atty's. Office, Indianapolis, Ind., for plaintiff-appellee.

Before WOOD, Jr. and POSNER, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

HARLINGTON WOOD, Jr., Circuit Judge.

This case serves as another reminder that the Bible, although regarded with great reverence by multitudes, may not

ing from about $22,000 to about $24,000 and that taxes due on this income ranged from about $4,800 to about $5,500. For the years 1984 and 1985, the years he was found guilty of wilfully failing to file his returns, his gross income was about $28,000 and $29,000, respectively, an amount clearly adequate to require the filing of federal tax returns.

The Internal Revenue Service decided that the defendant's situation deserved attention. In the fall of 1984 the defendant was twice contacted by IRS agents. When telephoned at work by an agent the defendant declined to discuss his W–4's; he explained that the lack of privacy handicapped him in discussing the matter. Later, when agents called upon him at his home, and after they gave him *Miranda* warnings, the defendant again declined comment except to say that he had been informed through correspondence with the IRS that he was not liable for any income taxes. That correspondence was not made available to the agents. The defendant's responses after the agents left were more illuminating. About a week after the home interview the defendant transferred the title to his real estate to his children, retaining a life estate for himself. At about the same time he also closed out his bank account.

At trial defendant explained that he did not believe that the IRS should be permitted to define what constituted a church as it would amount to the creation of a federal church, which would restrict a person's individual religious belief. He did concede that the transfer of real estate to his children was partially motivated by tax concerns, however, he claims the predominant motivation was his desire to avoid the making of a will. This was done, he said, on the advice of his lawyer.

The defendant vehemently asserts he qualifies as a church. In his testimony he explained that he and his wife did a lot of religious work with their own money, and after Bible study they concluded that they were exempt. He further explained that he had written an IRS office about the tax law and regulations governing churches.

The IRS response was, he said, that there were no regulations as to what constituted a church, so he decided that he was free to decide for himself whether or not he was a church. As stated in defendant's brief, he "was convinced that if you believe you are a church and you are practicing that religion to your point of view, that you can have tax exempt status because churches are exempt ... [and] are immune from taxes[,] ... and no form 1023 was required." Form 1023 is an IRS exemption form. The defendant further testified that the IRS publication did detail what was required for a church to qualify for a tax exemption. He therefore prepared a document for himself saying he satisfied all the IRS requirements in one way or another. The evidence showed that the defendant was at this same time a member, and had been an officer, in an established and recognized church. To explain that possible inconsistency in belonging to a recognized church while at the same time considering himself to be his own church, he offered a religious explanation. A church, he explained, can have more than one meaning. An individual is not the whole church nor is a congregation the whole church. Moreover, because all Christians are spiritually joined in one body, membership in more than one church is not significant.

A longtime friend of the defendant testified about the defendant's good works in giving clothing, food, and money to the needy, and also about his Bible teaching. Another friend testified that the defendant transported children to Bible School. The janitor at the established church to which the defendant belonged testified that the defendant taught, led prayer, served at the communion table, and read scripture in the church. A minister testified how the defendant had led a mission group to Canada. That witness also explained that no particular qualifications were necessary to become a minister. A church need only desire to so employ a particular person. Another witness testified that she had a mentally ill husband and that the defendant had helped them financially and had offered them counselling. Another witness testified

about defendant's contribution to an orphanage.

The evidence indicates that the defendant has acted charitably in the past, maybe using his own money toward that end on several occasions. It is equally clear from the evidence, and uncontradicted by the defendant, that he paid all of his family and personal living expenses from the same salary he claimed was tax exempt. It is the defendant's position that if what he did was wrong it was not wilful, but was merely a reasonable mistake about the law.

## II. DISCUSSION

The issue is not whether the defendant can consider himself to be the whole church or practice any religious beliefs he chooses. That is a personal matter that he is free to pursue as he sees fit. Instead, at issue is whether whatever he does in the way of establishing a church exempts him from paying income taxes on his wages derived from his government employment. Nor is the issue whether or not the defendant did in fact use some of his wages for charitable or religious purposes, entitling him to charitable deductions for some of his contributions. Instead, at issue is whether or not such use of some of his income served to exempt all of his income from taxation. The general answers to these issues are self-evident, but we will examine briefly the particular instructions and the sufficiency of the evidence, about which defendant complains.

Instruction 24 was given without objection, but the defendant now claims the giving of the instruction should lead to reversal because it constitutes plain error. *See* Fed.R.Crim.P. 52(a). The instruction advised the jury that, "A person may or may not consider himself to be a church as he sees fit. However, for purposes of the law regarding tax exempt organizations, one person cannot constitute a church or religious organization." The defendant complains that that instruction "seductively" eliminated his defense, which was that what he did was merely a reasonable mistake of law. The jury, he argues, could see, in view of the instruction, that one

person in ordinary circumstances could not be an organization, so it must follow that his disregard of such an obvious precept meant that he acted wilfully. The defendant also claims that the instruction is not a correct statement of the law. For instance, the defendant points out by way of analogy that business corporations may have only one shareholder, so likewise one person must be sufficient to form a church.

In any event, there is no need to try to resolve any conflict there may be between a person's personal view of what constitutes a church and that which the tax law recognizes as a church qualifying for tax exempt status, even if we could. For tax purposes the tax law prevails. It is obvious that one person cannot free all his taxable income from all tax liabilities by the simple expedient of proclaiming himself a church and making some religious contributions. Common sense makes this clear. The answer is even clearer when reference is made to the statute and regulations. Any effort to obfuscate the implausibility of the defendant's position necessarily reflects on a person's wilfulness.

Title 26 C.F.R. § 1.501(c)(3)–1a to –1(d) sets out the organizational and operational criteria for exempt organizations. These criteria are as follows: Assets upon dissolution are not to be distributed to a "private individual"; no part of net earnings shall go to the benefit of "private individuals"; and the organization shall not be organized for "private interests of creator of organization or his family." Title 26 C.F.R. § 1.501(a)–1(c) states that a "'private shareholder or individual'" refers to person having a personal and private interest in the activities of an organization. If it were otherwise there would likely be an overabundance of one-person churches paying no income taxes, and leaving to the rest of us the payment of their share of the expense of running the government. That attitude hardly seems like an act of churchly charity to one's neighbors, only to oneself.

A similar situation was addressed in *American Guidance Foundation, Inc. v. United States*, 490 F.Supp. 304 (D.D.C.

1980). In that case there was more evidence of a church than in the present case, but it was not enough to qualify for a tax exemption. The church in *American Guidance* was originally organized as a private educational foundation, and then by amendment of its charter it sought to become a tax exempt church. The "congregation" originally consisted of the defendant's mother, wife, sister, and brother-in-law, and later consisted only of the defendant, his wife, and their minor child. The defendant had graduated from a Bible college. Meetings were held only in defendant's home, and through advertising in the yellow pages a recorded religious message was made available to the public. The court considered, as do we, the various IRS criteria to help determine what is a tax exempt church.[1] The *American Guidance* court considered some of the criteria relatively minor, as do we, but others to be helpful. We find it important for instance that in the present case, as in *American Guidance*, there was no established congregation served by an organized ministry, no regular religious services, and no dissemination of a doctrinal code. As a whole these criteria help distinguish a church from some other form of religious enterprise. *See id.* at 306–07.

■ Defendant admits that his "church" had no organization provision for assuring that any assets possessed by the "church" would be distributed for an exempt purpose and not for the benefit of members or private individuals. On the other hand the defendant also claimed that the "church" actually had no assets because he used his own personal funds for his "religious work," as well as using those funds for his own personal and family living expenses. He did not consider that he was benefitting personally, he explained, as he kept his personal living expenses to a minimum. The balance of whatever remained was used for his "good works." However, it would appear that in his order of things his living and personal expenses had priority over his expenditures on good works.[2] The defendant's effort to create his one-person church, no matter the sincerity of his religious beliefs or the abundance of his religious contributions, does not satisfy the tax code's reasonable criteria in whole or in part. Like the defendant, many other church-going people devote much time, effort, and money to religious or charitable work, but they also pay their share of income taxes.

■ The government proved wilfulness beyond a reasonable doubt both for the jury, and for us. The jury was instructed regarding the mistake of law defense, and was informed that the burden of proving guilt beyond a reasonable doubt was on the government, not on the defendant. The jury was clearly told that if what the defendant did was a reasonable good faith misunderstanding of law, he should be found not guilty. The jury was further told that the defendant should also be found not guilty if his actions merely evi-

---

**1.** The criteria to be used as a guide are as follows:
    (1) a distinct legal existence
    (2) a recognized creed and form of worship
    (3) a definite and distinct ecclesiastical government
    (4) a formal code of doctrine and discipline
    (5) a distinct religious history
    (6) a membership not associated with any other church or denomination
    (7) an organization of ordained ministers
    (8) ordained ministers selected after completing prescribed studies
    (9) a literature of its own
    (10) established places of worship
    (11) regular congregations
    (12) regular religious services
    (13) Sunday schools for religious instruction of the young
    (14) schools for the preparation of its ministers.
*American Guidance Foundation, Inc. v. United States,* 490 F.Supp. 304, 306 n. 2 (D.D.C.1980) (citing Speech by Jerome Kurtz, IRS Commissioner, at PLI Seventh Biennial Conference on Tax Planning (Jan. 9, 1978), *reprinted in* Fed. Taxes (P–H) ¶ 54,820 (1978)).

**2.** Prior to trial the defendant filed a motion in limine seeking an order barring the government from introducing into evidence the fact that defendant admittedly was a member of the Posse Comitatus, a notorious tax-protester organization. We do not see that the court ruled on that motion, but in any event, no issue is made about it on appeal.

denced negligence or inadvertence. Still, the defendant argues that Instruction 24 prejudicially impacted those additional instructions. That natural and appropriate impact illustrates how factually simple this case is when the law is distilled into simple terms. The objected to instruction did no more than concisely state the applicable law in an understandable common sense way; it was not error.

Applying those appropriate instructions it is easy to see why the jury decided that the defendant acted wilfully. He knew about taxes, and up until he tried to be a one-person church, he filed his returns and paid his taxes. Shortly after he was questioned by the IRS agents he quickly transferred his house to his children, retaining a life estate in the realty for himself. He also closed out his bank account. His explanations of those actions did not satisfy the jury, the judges of credibility. The government's evidence could not but convince any rational trier-of-fact that the essential element of wilfulness had been proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560 (1979). This conclusion is bolstered when it is remembered that on appellate review we review the evidence in the light most favorable to the verdict. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). It is clear that the defendant understood what he was doing; he acted wilfully.

We have considered all of defendant's arguments and find them to be totally without merit. Judge Kaufman put it well in *Mone v. Commissioner*, 774 F.2d 570, 571 (2d Cir.1985), when he wrote, "Every year with renewed vigor, many citizens seek sanctuary in the free exercise clause of the first amendment. They desire salvation not from sin or from temptation, however, but from the most earthly of mortal duties —income taxes."

Any salvation sought from income taxes in this court is denied, and this case is

AFFIRMED.